

**FILED**

NOV 2 2 2019

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | ) Case No. |
| Sprint: | ) |
| Phone: 714-353-0997; IMEI: 355381091354170 | ) |
| ("Subject Account 3") | ) |

**1 9 MJ 1 1 5 1 8**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation of Fentanyl, Methamphetamine and Heroin |

The application is based on these facts:

See attached Affidavit of Special Agent Christian Sanders

☑ Continued on the attached sheet.

❐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Christian Sanders, Dep't of Homeland Security
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11/22/19__

_____
*Judge's signature*

City and state: El Centro, CA

Hon. Ruth B. Montenegro, United States Magistrate Judge
*Printed name and title*

1

## ATTACHMENT A

2
3   T-Mobile and Sprint hosts the electronic communication account associated with the following telephone numbers and IMEI numbers that are the subject of this search warrant and search warrant application:
4

5   T-Mobile:
    Phone: 657-347-6628
6   IMEI: 359637043670336
7   ("Subject Account 1")

8   T-Mobile:
9   Phone: 714-278-7075
    IMEI: 356769083284158
10  ("Subject Account 2")

11
    Sprint:
12  Phone: 714-353-0997
13  IMEI: 355381091354170
    ("Subject Account 3)
14  (collectively the "Subject Accounts")

15

16  T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 4 Sylvan Way, Parsippany, New Jersey 07504.
17

18
19  Sprint Corp. is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 6480 Sprint Parkway, Overland Park, Kansas 66251.
20

21
22
23
24
25
26
27
28

## ATTACHMENT B

**I.    Service of Warrant**

The officer executing the warrant shall permit the Provider(s) in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.    Items to be Seized**

Agents shall seize the following records, data, and information covering **May 1, 2019 to August 27, 2019** and maintained by the Provider for the subject accounts identified in Attachment A:

    a.  Subscriber information, including:
        1.    Names;
        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        3.    Local and long distance telephone connection records;
        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        5.    Length of service (including start date) and types of service utilized;
        6.    Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
        7.    Other subscriber numbers or identities; and
        8.    Means and source of payment (including any credit card or bank account number) and billing records.

    b.  Records and other information about past wire or electronic communications sent or received by the subject account, including:
        1.    the date and time of the communication;

2.   the method of the communication;
3.   the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; and
4.   Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications.
5.   Finally, all available PCMD and/or "timing advance" data reports, to include PCMD or timing advance data, for the narrow timeframe of **August 25, 2019 at 7:00 AM UTC through August 27, 2019 at 11 AM UTC.**

**which are evidence of violations of 21 U.S.C. §§ 841(a)(1), 846, 952, 960, 963 and 18 U.S.C. §§1956-1957.**

## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Christian Sanders, being duly sworn, state as follows:

1.      This affidavit is in support of an application by the United States of America for a search warrant for T-Mobile and Sprint, as described in Attachment A, to search the accounts associated with the following cellular telephone numbers and International Mobile Equipment Identity ("IMEI") numbers:

T-Mobile:
Phone: 657-347-6628
IMEI: 359637043670336
("Subject Account 1")

T-Mobile:
Phone: 714-278-7075
IMEI: 356769083284158
("Subject Account 2")

Sprint:
Phone: 714-353-0997
IMEI: 355381091354170
("Subject Account 3")

(collectively, the "Subject Accounts")

for subscriber information, telephone toll data, and cell-site geolocation data from **May 1, 2019 to August 27, 2019**. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 21 U.S.C. §§ 841(a)(1), 846, 952, 960, 963, as well as 18 U.S.C. §§ 1956-1957, as described in Attachment B.  This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services.  In this case, as will be shown below, T-Mobile and Sprint provides electronic communication services in the form of cellular and wireless telephone service for the subject account.

//

## EXPERIENCE & TRAINING

2.    I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am also cross-designated to conduct Title 21 investigations and am currently assigned to the Imperial Valley Border Enforcement Security Task Force (IV-BEST). I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the Drug Enforcement Administration ("DEA") and ICE. I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7).

3.    I have been employed as a Special Agent with HSI since June 2015. I have received criminal investigative training, including twenty-six weeks at the Federal Law Enforcement Training Center. As a result of my training and experience as a Special Agent, I am familiar with federal criminal statutes to include violations of Title 18, 21, and 31 of the United States Code.

4.    As a Special Agent with HSI, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code. I have participated in and conducted investigations of violations of various Federal criminal laws, including distribution of controlled substances, use of a communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, bulk cash smuggling, and money laundering, all in violation of Titles 18, 21, and 31, of the United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances. These investigations have also resulted in seizures of bulk cash, property, assets, and controlled substances. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations and Money Laundering Organizations in in the United States and abroad.

5.     The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

6.     On August 26, 2019, at approximately 7:25 P.M., Tiffany Renee SCHMIDT applied for entry at the Calexico, California West Port of Entry (POE) via the vehicle lanes. SCHMIDT was the driver of the vehicle, a 2019 Ford F-150 bearing California license plate 77830P2 and presented her California driver's license as identification. A United States Customs and Border Protection Officer (CBPO) obtained a negative customs declaration from SCHMIDT. The CBPO noticed SCHMIDT was visibly shaky and nervous. After querying the vehicle, the CBPO received a positive match for the vehicle being stolen. SCHMIDT was escorted to secondary inspection.

7.     During secondary inspection, SCHMIDT told CBPOs that the vehicle was a rental and was being rented by the passenger of the vehicle following behind her. John CARRIGAN and Kristofer BOWERS were following behind SCHMIDT in a 2005 Nissan Xterra bearing California license plate 8KZE921. At this time, CBPOs also escorted CARRIGAN and BOWERS to secondary inspection.

8.     In the secondary inspection lot, CBPOs obtained jumper cables for the Ford F-150 as the vehicle had died. As CBPOs attempted to jump-start the vehicle, they noticed anomalies with the vehicle's battery. At this time, a Canine Enforcement Officer (CEO) was requested to screen the Ford's battery with their assigned Human and Narcotic

Detector Dog (HNDD). The CEO received an alert to the battery. Further inspection resulted in the discovery of four (4) packages, with a combined total weight of 3.60 kilograms (7.92 pounds) containing a substance which tested positive for fentanyl. After DEA lab testing, the substance was confirmed as 3.198 kilograms of fentanyl.

9.     Post-arrest, SCHMIDT waived her *Miranda* rights and agreed to answers questions outside the presence of an attorney. SCHMIDT admitted to getting paid $1,000 by CARRIGAN for transporting narcotics from Mexicali, Baja California, Mexico to California. SCHMIDT also stated that BOWERS' vehicle was supposed to be loaded with narcotics and he was to be paid $1,000 as well. SCHMIDT stated that the three of them traveled down to Mexico from California riding in two different vehicles. CARRIGAN drove the Ford while SCHMIDT rode as a passenger. BOWERS followed behind them as he drove his Nissan. CARRIGAN obtained the Ford vehicle from another friend who rented the vehicle.     After SCHMIDT'S post-arrest interview, CBPOs then found SCHMIDT to be carrying internally 2.01 grams (0.00201 kilograms) of fentanyl, 4.69 grams (0.00469 kilograms) of methamphetamine, and 6.38 grams (0.00638 kilograms) of heroin.

10.     Post-arrest, BOWERS waived his *Miranda* rights and agreed to answers questions outside the presence of an attorney. During the interview, BOWERS claimed that he and CARRIGAN had traveled to Mexico to visit a friend of CARRIGAN's. He claimed that he and CARRIGAN had traveled down to Mexico together riding in his Nissan. BOWERS denied knowing SCHMIDT or ever meeting her. BOWERS claimed the first time he had ever seen SCHMIDT was when she was in the lane in front of him while they crossed into the United States.   BOWERS disclaimed knowledge of the narcotics in the Ford F-150 driven by SCHMIDT.

11.     Post-arrest, CARRIGAN invoked his *Miranda* rights.

12.     Agents seized cellphones associated with the Subject Accounts incident to SCHMIDTs', CARRIGAN's, and BOWERS' arrests. Subject Account 1 corresponds with

1   SCHMIDT's cellphone.  Subject Account 2 corresponds with CARRIGAN's cellphone.
2   And Subject Account 3 corresponds with BOWERS' cellphone.

3       13.    As part of my investigation, I reviewed crossing history for all three subjects.
4   Crossing records show that both the Ford F-150, bearing California plates 77830P2, and
5   the Nissan Xterra, bearing California plates 8KZE921, have only two crossings each. One
6   crossing shows both vehicles crossed southbound into Mexico on August 25, 2019 within
7   seconds of each other. The records also indicate the two vehicles crossed northbound into
8   the United States in tandem with each other on August 26. Furthermore, crossing photos
9   depict the southbound crossing into Mexico of the Ford F-150 through the Calexico West
10  POE on August 25. In the photo, a male driver, who appears to be CARRIGAN, is driving
11  the Ford F-150 while the Nissan Xterra follows closely behind.

12      14.    Crossing records for the last 18 months indicate that SCHMIDT had three
13  crossings between July 26, 2019[1] and her August 26, 2019. SCHMIDT's first crossing was
14  on July 26, 2019 in a vehicle bearing California plate 62074D1. SCHMIDT's second
15  crossing was on August 14, 2019 in a vehicle bearing California plate 29948S2.
16  SCHMIDT's last crossing was on the date of her arrest in the Ford F-150 with California
17  plate 77830P2.

18      15.    Crossing records for the last 18 months indicated that CARRIGAN had seven
19  crossings, both vehicle and pedestrian, dating back to June 10, 2019. One of those crossings
20  was with a vehicle bearing California plate 29948S2.  Four crossings were in a vehicle
21  bearing California plate 62074D1, which includes the July 26, 2019 crossing with
22  SCHMIDT. CARRIGAN also has one pedestrian crossing on June 10, 2019. On August
23  26, 2019, Carrigan crossed in the Nissan Xterra bearing California plate 8KZE921.

24      16.    Crossing records for the last 18 months indicated that BOWERS only has the
25  one crossing on August 26, 2019 from Mexico into the United States in the Nissan bearing
26  California plate 8KZE921.

27  ────────────────
[1] The actual records show July 27, 2019 but they are in Eastern Standard Time.  Once the
28  conversation is made, the local date is July 26, 2019.

-5-

17.     Along with other information uncovered during my investigation, I believe that historical cell site information will help identify patterns of travel between SCHMIDT, CARRIGAN, and BOWERS during the August 26, 2019 smuggling venture as well as other prior ventures that SCHDMIT, CARRIGAN, BOWERS, and other co-conspirators may have been involved with.

18.     Based on my training and experience, and my consultation with other law enforcement officers, I am aware that T-Mobile and Sprint routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers.  The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

19.     In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

a.     I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks.  Different providers may use different terminology to describe PCMD.  For example, AT&T has referred to the resulting location information as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "timing advance" data.

20.     This application also requests such per call measurement data (by whatever name the provider uses) for the Subject Accounts for the following date and time range: **August 25, 2019 at 7:00 AM UTC through August 27, 2019 at 11 AM UTC**.  During

1   this time period, the subscriber for the subject account is believed to have been located in
2   the vicinity of Anaheim, California and Calexico, California.

3       21.   Given these facts, I seek a warrant to search the Subject Accounts for the
4   records and information in Attachment B.

5   **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

6       22.   The United States is unaware at this time of other attempts by the U.S.
7   government to obtain this data by other means.

Christian Sanders
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 22nd day of November, 2019.

Honorable Ruth Bermudez Montenegro
United States Magistrate Judge

-7-

# ATTACHMENT A

T-Mobile and Sprint hosts the electronic communication account associated with the following telephone numbers and IMEI numbers that are the subject of this search warrant and search warrant application:

T-Mobile:
Phone: 657-347-6628
IMEI: 359637043670336
("Subject Account 1")

T-Mobile:
Phone: 714-278-7075
IMEI: 356769083284158
("Subject Account 2")

Sprint:
Phone: 714-353-0997
IMEI: 355381091354170
("Subject Account 3)
(collectively the "Subject Accounts")

T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 4 Sylvan Way, Parsippany, New Jersey 07504.

Sprint Corp. is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 6480 Sprint Parkway, Overland Park, Kansas 66251.

-8-

# ATTACHMENT B

## I.   Service of Warrant

The officer executing the warrant shall permit the Provider(s) in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

## II.   Items to be Seized

Agents shall seize the following records, data, and information covering **May 1, 2019 to August 27, 2019** and maintained by the Provider for the subject accounts identified in Attachment A:

  a.  Subscriber information, including:
  1. Names;
  2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
  3. Local and long distance telephone connection records;
  4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
  5. Length of service (including start date) and types of service utilized;
  6. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
  7. Other subscriber numbers or identities; and
  8. Means and source of payment (including any credit card or bank account number) and billing records.

  b.  Records and other information about past wire or electronic communications sent or received by the subject account, including:
  1. the date and time of the communication;

2.     the method of the communication;

3.     the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; and

4.     Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications.

5.     Finally, all available PCMD and/or "timing advance" data reports, to include PCMD or timing advance data, for the narrow timeframe of **August 25, 2019 at 7:00 AM UTC through August 27, 2019 at 11 AM UTC.**

**which are evidence of violations of 21 U.S.C. §§ 841(a)(1), 846, 952, 960, 963 and 18 U.S.C. §§1956-1957.**